## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC, d/b/a MR. COOPER, on its own behalf and on behalf of residential mortgage loan owners and trustees,<br><br>       Plaintiff,<br><br>  v.<br><br>RADIAN GUARANTY INC.,<br><br>       Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nationstar Mortgage, LLC, d/b/a MR. COOPER ("Nationstar"), on its own behalf as the owner of certain loans and on behalf of residential mortgage loan owners and trustees, as the servicer and/or sub-servicer of all loans at issue, by its undersigned counsel, files this Complaint ("Complaint") against Defendant Radian Guaranty Inc. ("Radian"), and in support thereof, alleges as follows:

### NATURE OF THE ACTION

1.      Nationstar brings this action to hold Radian accountable for its bad faith, breaches of contract, and unfair and deceptive conduct towards its policyholders on thousands of claims involving millions of dollars of losses on defaulted loans. Before the financial crisis, Radian reaped hundreds of millions of dollars through its participation in the home mortgage market, selling mortgage insurance policies to ensure that the borrowers of certain residential mortgage loans made payment of principal and interest, and promising that in the event of borrower default, it would pay claims with respect to those defaulted loans.  In the midst of the financial crisis, however, Radian became concerned about its financial standing and began to pursue a loss mitigation strategy of denying, rescinding or limiting coverage, rather than engaging in good faith claims handling.

2.      Nationstar asserts claims for breach of contract, declaratory relief and equitable indemnification arising out of Radian's repeated breaches of its contractual obligations to pay losses due to defaults on loans by borrowers under the terms of insurance policies issued by Radian that insure against the default of first-lien mortgages.  Nationstar also asserts a claim for bad faith based on Radian's wrongful and unreasonable refusal to pay claims that Radian recognizes as valid by denying and/or rescinding coverage, as well as Radian's wrongful and unreasonable refusal to pay the full amount due on claims submitted for payment even in those situations where Radian has determined that coverage exists for a particular claim, among numerous other instances of deceptive activity. Finally, Nationstar asserts claims for unjust enrichment and conversion based on Radian's improper withholding of funds through its curtailment and nonpayment of claims, and its refusal to reimburse Nationstar for premium overpayments (hereafter, the "Premium Overpayments").

3.      Radian has denied or curtailed millions of dollars in valid mortgage insurance claims on loans serviced by Nationstar for reasons not permitted under its insurance policies. Rather than engage in good faith claims handling, in or around mid-2007, Radian started to develop a strategy to mitigate its losses from the growing financial crisis by: (1) rescinding coverage or denying claims in full; or (2) where that could not be accomplished, paying less than the full amount owed under its insurance policies due to alleged servicing defects related primarily to default servicing and the completion of foreclosure proceedings (hereinafter, to "curtail" or a "curtailment").  Radian's implementation of this strategy through the utilization of these tactics increased and evolved over time, and was not apparent to policyholders like Nationstar until years later.

4.      Radian's bad faith refusal to pay valid claims is part of its ongoing and evolving strategy since the collapse of the housing market to attempt to clear its books of losses so as to

create the illusion of a more favorable business outlook for regulators and investors. Radian furthered these inappropriate efforts to stay financially afloat when it refused Nationstar's demands for reimbursement of the Premium Overpayments.

5.      As a result of Radian's wrongful conduct, Nationstar, on its own behalf and on behalf of residential mortgage loan owners and trustees as to loans for which it acts as servicer, is seeking: (1) a declaratory judgment declaring that Radian's practices with respect to its curtailments, denials, and/or rescissions of claims are improper; (2) actual money damages as a result of Radian's breach of contract by failing to pay valid claims on thousands of individual loans; (3) punitive damages, attorneys' fees and costs, interest, and all damages and other available relief recoverable by law as a result of Radian's bad faith handling of thousands of individual claims for coverage; (4) equitable indemnification for sums Nationstar was forced to pay to third parties resulting from Radian's wrongful curtailments, denials, and/or rescissions; and (5) reimbursement of the Premium Overpayments that have unjustly enriched Radian.

## THE PARTIES

6.      Nationstar is a limited liability company organized under the laws of the State of Delaware, and maintains its principal place of business in Texas. Nationstar is an indirect, wholly-owned subsidiary of nonparty WMIH Corp. ("WMIH"), a Delaware corporation. Nationstar is directly owned by two members, nonparties Nationstar Sub1 LLC ("Sub1") and Nationstar Sub2 LLC ("Sub2"). Both Sub1 and Sub2 are Delaware limited liability companies. Further, Sub1 and Sub2 are both wholly owned by nonparty Nationstar Mortgage Holdings Inc. ("NSM"). NSM is a corporation formed pursuant to the laws of the state of Delaware with its principal place of business in Texas, and is a wholly owned subsidiary of WMIH. NSM is a citizen of the states of Delaware and Texas for purposes of diversity of citizenship.

7.      Because limited liability companies share the citizenship of their members,

nonparties Sub1 and Sub2 and plaintiff Nationstar are also citizens of Delaware and Texas for purposes of diversity of citizenship.

8.      At all relevant times, Nationstar owned and serviced first-lien mortgage loans, including loans insured by Radian that are the subject of this litigation.  Nationstar is the servicer for each loan at issue and, under the subject mortgage insurance policies, is authorized as an insured to bring this litigation for the reasons discussed in more detail below.  Nationstar was not the lender on any of the loans at issue.

9.      Radian is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, and maintains its principal place of business in Philadelphia, Pennsylvania. Radian is in the business of selling mortgage insurance for residential home mortgage loans, and is a sophisticated market actor in this area.  Radian drafted and issued the mortgage insurance policies at issue in this litigation.

## JURISDICTION AND VENUE

10.     The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the Parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), in that, among other things, Radian resides in this District.

## THE LOANS AT ISSUE

12.     There are thousands of loans at issue in this litigation. Attached hereto as **Exhibit 1** is a list of the certificate numbers for each of the 3,014 loans for which Radian improperly curtailed, denied, and/or rescinded coverage. Attached hereto as **Exhibit 2** is a list of the certificate numbers for each of the 2,232 loans where Radian refuses to reimburse the Premium Overpayments.

13.     With the certificate number alone, Radian is able to identify for each loan at issue, *inter alia*, the applicable standard policy form, the applicable endorsements (if any), the original lender, whether the loan was originated under a delegated underwriting program (described below), the effective date of the certificate, the borrower name, the property address, the loan amount, the insured amount, the occupancy type, the appraised value, the loan-to-value ratio, and the premium amount.

14.     With the certificate number, Radian is also able to identify not only the loans for which it curtailed, denied, and/or rescinded coverage, but also the ground(s) it asserted to curtail, deny, or rescind coverage.  Also, to the extent an appeal or request for reconsideration was submitted, Radian knows or should know the ground(s) upon which Nationstar was contesting Radian's adverse claims decisions.  The policies, however, do not require an appeal as a condition to instituting litigation regarding an adverse claim decision.

15.     With the certificate number, Radian also knows or should know when the premium payments will cease.

**THE MORTGAGE INSURANCE POLICIES**

16.     Radian issues three different types of mortgage insurance policies: (a) flow policies; (b) bulk policies; and (c) pool policies.

**A.     Flow Policies**

17.     Flow policies cover an ongoing stream of individual loans originated and/or acquired by mortgage lenders in the ordinary course of business.  Loans insured by flow policies ("flow loans") are individually submitted for coverage and underwritten on a loan-by-loan basis, with mortgage insurance being placed at the time of origination.  Flow loans often are either held for investment by the lender or sold to private investors or the government sponsored enterprises, such as Fannie Mae and Freddie Mac ("GSEs"). They also may end up in residential mortgage-

backed securitizations. Flow loans continue to be insured even if they are sold by the originator to a third-party investor, such as a GSE or trustee for a mortgage-backed securitization.

18.    In a securitization, a lender creates a "pool" of hundreds or even thousands of individual mortgage loans, grouping them together based on their individual characteristics.  A portion of the loans often will be covered by mortgage insurance. The "pool" of loans is sold to a special purpose trust. These loans are then used as collateral to support certificates or notes that are sold to private investors.

19.    The flow policies sold by Radian (hereinafter, the "Flow Policies") are subject to the terms and conditions set forth in Radian's Master Policy form (the "Master Policy"), which is attached hereto as **Exhibit 3**.  The Master Policy is a standard form policy drafted by Radian and utilized with numerous policyholders insured by Radian. The terms of the Master Policy were not subject to negotiation.

20.    Coverage on individual loans insured under the Flow Policies are subject to certain endorsements that also were drafted entirely by Radian, and the language used in these endorsements was not subject to negotiation. One such endorsement generally attached to the Flow Policies is a Delegated Underwriting Endorsement. In its 2006 Form 10-K filed with the U.S. Securities and Exchange Commission ("SEC"), Radian described its "delegated underwriting" program  as follows:

> [W]e enter into agreements with our mortgage lender customers that commit us to insure loans using pre-established underwriting guidelines.  Once we accept a lender into our delegated underwriting program, we generally insure a loan originated by that lender even if the lender does not follow our specified underwriting guidelines.  Under this program, a lender could commit us to insure a material number of loans with unacceptable risk profiles before we discover the problem and terminate that lender's underwriting authority.  Even if we terminate a lender's underwriting authority, we remain at risk for any loans previously insured on our behalf by the lender before that termination.  The performance of loans insured through programs of delegated underwriting has not been tested over a period of extended adverse economic conditions, meaning that the program could lead to greater losses than we anticipate.

21.     Under its Flow Policies, Radian is obligated to pay a percentage of the loss for each covered claim and there is no aggregate policy limit, so the number of potential claims that may be paid is only limited by the number of loans that are covered.

**B.     Bulk Policies**

22.     Unlike flow policies, bulk policies cover an identified group of loans that have already been originated.  Under each of its bulk policies, Radian agreed to provide coverage on each loan that was part of a group of identified mortgage loans. The loans insured by bulk policies often are included in residential mortgage-backed securitizations.

23.     The Radian bulk policies (hereinafter, the "Bulk Policies"), like the Flow Policies, are standard form policies that were drafted entirely by Radian, and the language of these policies was not subject to negotiation. The Bulk Policies are subject to the terms and conditions set forth in Radian's Master Policy, which is attached hereto as Exhibit 3. Before Radian decided to issue each Bulk Policy, it issued a commitment letter to the original insured.  The commitment letters, among other things, set forth certain terms under which Radian agreed to provide coverage pursuant to the terms of the Master Policy.

24.     Under the Bulk Policies, Radian typically is obligated to pay a percentage of the loss for each covered claim and there is no aggregate policy limit.

**C.     Pool Policies**

25.     Nationstar also services mortgage loans that are part of residential mortgage-backed securitizations and that are insured by Radian under pool policies issued specifically to cover those securitizations. Pool policies, like the Bulk Policies, cover a group of identified, individual mortgage loans. The Pool Policies are written on standard policy forms drafted entirely by Radian and the language of the policies was not subject to negotiation.

26.     Radian has received and continues to receive all required premiums under the Flow Policies, Bulk Policies, and Pool Policies (collectively, the "Policies"). Nationstar has satisfied any retentions or deductibles pursuant to the terms of the Policies.

27.     Nationstar has performed all material conditions, covenants, and promises required to be performed by it under the Policies, and/or has been at all times ready, willing and able to perform any and all such conditions, covenants and promises, to the extent that such promises, conditions, and covenants are not subject to waiver, estoppel or other avoidance as against Radian.

## NATIONSTAR'S AUTHORITY TO BRING THIS LITIGATION

28.     Nationstar is the insured for certain loans at issue, and as such is authorized to bring this litigation on its own behalf and is seeking damages Nationstar itself has suffered as a result of Radian's improper curtailments, denials, and/or rescissions under the Policies for which Nationstar is the insured.

29.     Nationstar also is the servicer or subservicer for each loan at issue in this litigation. As the servicer or subservicer, Nationstar's duties typically include: accepting and recording mortgage payments; calculating variable interest rates on adjustable rate loans; paying taxes and insurance from borrower escrow accounts; negotiating workouts and modifications of mortgages upon default; conducting or supervising the foreclosure process when necessary; submitting mortgage insurance claims; collecting mortgage insurance proceeds if and when a claim is submitted and paid by the mortgage insurer; distributing the mortgage insurance proceeds to the proper beneficiaries; challenging adverse claim decisions issued by the mortgage insurer; attempting to resolve adverse claim decisions without litigation; and litigating claims for coverage if and when the mortgage insurer improperly denies, rescinds or curtails coverage.

30.     Nationstar, as servicer or subservicer of all of the loans at issue in this litigation, is authorized to bring this litigation on behalf of the insured for all loans at issue as to which Nationstar is not the owner and is seeking damages that the owners of such loans have suffered as a result of Radian's improper denials, rescissions, and curtailments under the Policies.

31.     For those loans where Nationstar is the servicer or subservicer, the insured generally is the current owner of the loan, such as one of the GSEs or the trustee of a securitization.  Nationstar's authority to bring this litigation on behalf of the GSEs and trustees is derived from the Policies and, where applicable, the transaction agreements governing the subject securitizations.

### A.     THE SERVICER'S AUTHORITY UNDER THE POLICIES

32.     The Flow Policies and Bulk Policies state that "The Servicer is deemed to be the representative of the Insured for purposes of the Policy." The Flow Policies and Bulk Policies do not place any limitations on the servicer's standing to act in its role as a representative of the insured.

33.     Where, as under the Flow Policies and Bulk Policies, an owner or investor purchases a mortgage loan that is insured by a policy that explicitly identifies the servicer as a representative of the insured, that owner or investor agrees that the servicer may act on its behalf in submitting claims to the mortgage insurer and in pursuing mortgage insurance proceeds in the event that the mortgage insurer curtails, denies, or rescinds coverage. Therefore, under the express terms of the Flow Policies and Bulk Policies, Nationstar, as the servicer or subservicer of the subject loans, is the representative of the insured and has been authorized by both the owner/investor and Radian to bring this litigation against Radian for its failure to pay in full valid claims submitted under the Flow Policies and Bulk Policies.

B.    THE SERVICER'S AUTHORITY UNDER THE TRANSACTION AGREEMENTS

34.    For those loans insured by Bulk Policies and Pool Policies that are part of securitizations, in addition to the Policies themselves, the transaction agreements relating to the securitizations further confirm the servicer is authorized to pursue litigation against Radian to collect insurance proceeds under the Policies.

35.    One such transaction agreement is the pooling and servicing agreement ("PSA") entered into between the trustees and servicer, among other parties, which explicitly authorizes a servicer, like Nationstar, to take all actions under the Bulk Policies and Pool Policies. As an illustrative example:

> The Servicer covenants and agrees to exercise its best reasonable efforts to maintain and keep the PMI Policy in full force and effect throughout the term of this Agreement. In the performance of its duties hereunder, the Servicer shall comply with the terms of the PMI Policy . . . . The Servicer shall, on behalf of the Trustee, prepare and file on a timely basis with the PMI Insurer, with a copy to the Trustee, all claims which may be made under the PMI Policy with respect to the related PMI Mortgage Loans. Consistent with all rights and obligations hereunder, the Servicer shall take all actions required under the PMI Policy as a condition to the payment of any such claim.

*See*, *e.g.*, October 1, 2005 Pooling and Service Agreement, Sec. 3.27, SABR 2005-FR5.

36.    The PSA for each securitization at issue in this litigation is publicly available on the SEC's website.

37.    Based on the express terms of the PSAs for all of the securitizations at issue in this litigation, Nationstar as servicer is authorized and entitled on behalf of the trustees to take all actions under the relevant Policies, including bringing this litigation.

## FACTUAL BACKGROUND

38.    During the 2005 to early 2007 time period, there was such great competition in the mortgage insurance market that Radian, along with other mortgage insurers, engaged in an aggressive marketing campaign to convince lenders to purchase its mortgage insurance products and services, rather than those of competitors.

39.     Mortgage insurance was marketed as the means to protect lenders and servicers from the volatility of the mortgage market.  The now defunct Mortgage Insurance Companies of America ("MICA"), of which Radian was once a member, explained that "[r]ecent trends in industry profitability provide a graphic picture of the cyclical risks of mortgage lending.  It is against this pattern of peaks and valleys that mortgage insurance was designed to protect lenders."  MICA 2001-2002 Fact Book & Membership Directory at 19.  As further recognized by MICA, "[m]ortgage insurers cannot raise premiums or cancel policies if risk increases over time."  MICA 2008-2009 Fact Book & Membership Directory at 16.

C.     THE EXPANSION OF RISKS INSURED BY RADIAN

40.     In the mid-2000s, when the real estate market was booming, Radian agreed to insure a large number of loans where lenders' underwriting guidelines did not require the lender to obtain documentation to verify the borrower's income. These loans are often referred to as "stated income" loans, as the borrower stated his or her income on the loan application, but the income was not required to be verified by the underwriter.

41.     Stated income loans were common in the mortgage industry, and Radian knew and understood that such loans did not require the verification of borrower income.  Radian recognized the increased risk associated with stated income loans and charged a higher premium to account for the increased risk. As Radian stated in its 2006 Form 10-K: "Because of the reduced documentation, we consider Alt-A business [including stated income loans] to be more risky than prime business, particularly Alt-A loans to borrowers with FICO scores below 660. We insure Alt-A loans with FICO scores ranging from 620-660, but we have measures in place to limit this exposure, and we charge a significantly higher premium for the increased default risk associated with these loans." Radian Group Inc., Annual Report (10-K) at 10 (Mar. 1, 2007).

### D.   THE "MORTGAGE CRISIS"

42.   In or around 2007, the once booming U.S. housing market collapsed.  Throughout 2007, real estate prices flattened and began to decrease nationally in the first sustained nationwide home-price depreciation since the Great Depression, leading to substantial increases in default and foreclosure rates.  Radian, as an active participant in the real estate and mortgage markets, was well-aware of these market conditions.  Media outlets provided non-stop coverage of the "mortgage crisis."  In an earnings conference call on July 25, 2007, Radian's CEO explained: "There is no denying that today's environment is more difficult than anticipated, perhaps the most challenging environment we have seen in a long time . . . . The rising interest rates and home price declines were the primary drivers of the increase in default rates across the board with primary areas of deteriorating performance in California, Florida and several Midwest states."  Final Tr. of Radian 2d Quarter 2007 Conference Call, July 25, 2007.

43.   As the U.S. economy spiraled into deep economic recession, home prices plummeted and many homeowners found themselves "underwater," in a position of negative equity wherein they had mortgage debt higher than the value of their homes.  The collapse of the real estate market was accompanied by a crash in the labor market, with employers downsizing, eliminating millions of employees and reducing the salaries of remaining employees.  According to the United States Department of Labor, the unemployment rate rose to over 10% in October 2009.  In an earnings call on May 5, 2009, Radian's CEO described the situation as "the worst economic environment since the Great Depression." Final Tr. of Radian 1st Quarter 2009 Conference Call, May 5, 2009.

44.   As a result of the deep economic recession, there was a dramatic increase in defaults on residential mortgage loans. From 2005 to 2008 alone, approximately 1.2 million home foreclosures occurred as a symptom of the recession.

45.     On March 27, 2008, Radian announced that it was eliminating its "stated income" and "stated asset" programs.  Press Release, *Radian Guaranty Inc. Eliminates 'Stated Income' and 'Stated Asset' Programs*, (Mar. 27, 2008).  In a message to clients, Radian commented, "while certain forms of alternative documentation used to verify assets and income are appropriate with a disciplined underwriting process, the stated programs will no longer be insurable as a result of poor performance."  *Id.*  An article announcing these changes attributed them to the change in market conditions and weaknesses in the housing market and the economy:

> These significant changes represent a variety of adjustments to loan-to-value, documentation and FICO requirements, and are part of an ongoing process at Radian to respond quickly to market conditions.
>
> These changes reflect the current market conditions and a commitment to our business partners and shareholders to write new business that will allow homebuyers appropriate and affordable alternatives," commented Dave Applegate, President of Radian Guaranty.  "The continued weakness in the housing market and overall economy has created unprecedented challenges for the industry and our clients. . . . Accordingly, we have tightened guidelines and increased pricing in areas in which we continue to see deterioration in our risk adjusted returns.

*Id.*  In other words, when the economy was strong, Radian was willing to expand its guidelines, but when the economy weakened, Radian tightened its guidelines.

**E.     PROPER SUBMISSION OF CLAIMS FOR COVERAGE**

46.     After the collapse of the real estate market, the number of claims submitted to Radian for loans in default increased dramatically for all lenders.  The increase in defaults was not limited to loans serviced by Nationstar, but was a phenomenon that occurred nationwide and impacted all mortgage lenders and servicers. This risk of default is exactly the type of risk Radian agreed to insure.

47.     Certain loans insured under the Policies have been and continue to be in default as that term is defined in the Policies.

- 13 -

48.     Nationstar substantially complied with any timeliness requirements in filing a claim and proof of loss for each loan at issue in this litigation pursuant to the terms and conditions of the Policies, except to the extent that timely filing was excused, or is subject to waiver, estoppel or other avoidance as against Radian.

49.     The claims and proofs of loss that were submitted for the loans insured under the Policies comply with the applicable terms and conditions of the Policies and/or applicable law or, at a minimum, substantially comply with the applicable terms and conditions of the Policies and/or applicable law, except to the extent that performance was excused, or is subject to waiver, estoppel or other avoidance as against Radian.

50.     Pursuant to the terms and conditions of the Policies, Nationstar and/or the prior servicer diligently pursued Appropriate Proceedings (as that term is defined in certain Radian Policies and below) and/or attempted to mitigate loss for each of the loans in default, except to the extent that performance was excused, or is subject to waiver, estoppel or other avoidance as against Radian.

51.     The efforts of Nationstar and/or the prior servicer in diligently pursuing foreclosure (and other such) proceedings and/or mitigating loss comply with the applicable terms and conditions of the Policies or, at a minimum, substantially comply with the applicable terms and conditions of the Policies, except to the extent that performance was excused, or is subject to waiver, estoppel or other avoidance as against Radian, which is all that is required under the law.

F.     RADIAN'S IMPROPER CLAIMS HANDLING

52.     Despite Nationstar's compliance or substantial compliance with the applicable terms and conditions of the Policies, Radian has attempted to escape its coverage obligations by taking unreasonable positions in its claims handling and/or engaging in improper post-loss

underwriting in order to improperly curtail, deny, or rescind valid claims that should have been paid in full.

53.     Regarding the applicable statutes of limitations, the triggering event is the date of Radian's breaches of the Policies at the very earliest.

### 1.     Radian's Improper Curtailments of Covered Claims

54.     Radian has improperly deducted amounts from claims that Radian agrees are covered under its Policies.  These deductions purport to account for alleged delays in foreclosure and other ways in which Radian alleges the servicer of the loan supposedly failed to properly service and/or mitigate losses. Radian's efforts to curtail covered claim payments are improper and a further manifestation of its improper claims handling in an attempt to limit its exposure to covered claims post hoc to preserve its financial standing at the expense of its insureds.

55.     Radian's Policies, which provide little guidance to Servicers concerning the commencement and completion of foreclosure proceedings and loss mitigation activities, are insufficient to support Radian's curtailments. Indeed, Radian never cites to any policy provisions in its correspondence curtailing claims.

56.     At most, certain Policies provide that:

The Insured shall commence and diligently pursue Appropriate Proceedings, but in no event later than six (6) months after it is permitted to do so pursuant to the terms of the Loan and applicable law. . . .

Ex. 3, Master Policy at 11.

57.     "Appropriate Proceedings" typically is defined as:

any action or proceeding which vests in the Insured all of the Borrower's rights and title in and to the Property including, but not limited to, foreclosure by public or private sale or voluntary conveyance from the Borrower; provided, however, that such action or proceeding shall not be inconsistent with the requirements of Conditions Six, Nine and Fifteen of this Policy and is permitted by applicable law.

Ex. 3, Master Policy at 3.

58.     Nationstar is not required to commence Appropriate Proceedings before the Loan becomes six (6) months in Default. None of the Policies define what it means to "diligently pursue" Appropriate Proceedings. Nor do the Policies specify any timeframe by when Nationstar must complete Appropriate Proceedings.

59.     There are no express provisions in the Policies that authorize Radian to curtail claims for purported delays made by Nationstar in commencing, pursuing or completing Appropriate Proceedings.

60.     The only provision that is potentially applicable to Radian's curtailments is the Negligence exclusion, which provides:

> Any Loss arising out of any negligence of the Insured or Servicer in the origination or servicing of a Loan which negligence is either the proximate cause of such Loss or materially increases the risk insured, provided that if the Company can reasonably determine the amount by which such negligence increased the Loss as calculated in Condition Eleven (B), its remedy shall be to adjust the Loss accordingly.

Ex. 3, Master Policy at 10.

61.     Thus, by the express terms in those Policies that contain exclusions or limitations for "negligence," Radian cannot curtail a claim unless it proves that Nationstar was in fact negligent in the servicing of a loan, that such negligence was "either the proximate cause of such loss or materially increase[d] the risk insured," and that Nationstar's negligence increased the loss.

62.     Like the Appropriate Proceedings provision, the Mitigation of Damages provision in certain Radian Policies fails to support Radian's curtailments. That provision, in pertinent part, provides:

> The Insured shall actively cooperate with the Company to prevent and mitigate Loss including, without limitation, the collection of rents, the assertion of its rights in and to any collateral or security in its custody or control, assertion of rights against the Borrower, and prompt reporting to the Company of any preforeclosure sale offers.  If a preforeclosure sale is approved by the Company and the Insured, but for any reason the sale does not close, then the Company

shall continue to administer the Policy as if no sale had been attempted. The Company may assist the Insured in efforts to mitigate any Loss.

Ex. 3, Master Policy at 14.

63.     The Mitigation of Damages provision further stresses that Radian "shall actively cooperate with the Insured to administer the Policy in such a way as to not increase the Insured's uninsured loss, pursuant to the reciprocity and mutuality of the parties' obligations."  Therefore, if Radian receives notice when the borrower defaults, and then recurring monthly reporting on the subject loans, Radian has an obligation to tell Nationstar if and when Radian believes Nationstar's servicing is or soon could be increasing any loss.

64.     Certain Policies further provide that:

> Every Loan insured under this Policy shall be serviced in a reasonable and prudent manner and consistent with the highest standards of servicing in use in the residential mortgage industry.  Such servicing shall include, but not be limited to, diligent efforts to cure a Default, including Borrower contact, and prompt reporting of any Default to the appropriate credit reporting bureau(s). . . .

Ex. 3, Master Policy at 12.  But none of Radian's Policies define what it means to be of the "highest standards of servicing in use in the residential mortgage industry."

65.     In an improper attempt to fill in the gaps created by its Policies and to justify its excessive and inappropriate curtailment rate, Radian unilaterally introduced its Servicing Guide ("Guide"), which was *never* incorporated into the Policies and does *not* bind Nationstar. Radian's post-hoc servicing standards Guide fails to properly account for servicing delays imposed by applicable law and industry standards designed to protect distressed homeowners, and conflicts with relevant provisions in its Policies.  In addition, Radian's unilaterally-imposed servicing standards Guide changes from time to time at Radian's whim, and does not properly account for delays beyond a servicer's control, such as a borrower's change in financial circumstances requiring re-review of eligibility for workout programs, gaps and/or delays in

borrower documentation, court delays, borrower litigation or bankruptcy, or title issues that could result in extended default servicing and/or foreclosure timelines.

66.     For GSE loans, certain GSE guidelines and/or the Guide detail averages for each states' timelines regarding the termination of foreclosure proceedings. Radian imposed its own timelines and curtailed interest payments on the related claims if the foreclosure at issue was on a longer timeline than the subject state's average, regardless of individual facts or circumstances of that particular claim.

67.     Further, Radian imposed arbitrary servicing performance review curtailments and penalties that substantially discounted claims payments without any showing that the servicing was negligent, that any alleged negligence damaged Radian, and/or the amount of the alleged damage itself.

68.     Upon information and belief, Radian also curtailed or denied coverage based on its own internal guidelines that it either was unwilling to share with Nationstar or that were never documented and thus were completely subjective and arbitrary depending on the Radian analyst reviewing any given loan, and that present a moving target for servicers, including Nationstar.

69.     Radian's refusal to pay the full claim amount has nothing to do with Nationstar's loan servicing practices and everything to do with Radian's efforts to preserve capital.

70.     As a result of Radian's wrongful curtailment of claims, in breach of the Policies, Nationstar and the insureds have suffered damage and will continue to suffer damage. Such curtailments were not cured by mutual rescission, accord and satisfaction, or the like.

### 2.     Radian's Improper Claim Denials

71.     In addition to improper curtailments, Radian's claim denials assert improper reasons for denial that lack any factual or legal support, are based on improper interpretations of

the Policies, and are inconsistent with the way Radian processed claims before the economy collapsed and the number of claims increased significantly.

72.     For example, Radian has wrongfully denied claims because it contends it did not receive all documentation it requested in order to evaluate coverage.  Radian makes this assertion even though the documents it purportedly needs were not required at origination under the applicable guidelines, are not reasonably required by Radian in order to reach a claim determination, and/or the information contained in the allegedly missing documents can be obtained from other sources upon a good faith investigation by Radian.

73.     By way of further example, Radian also has wrongfully denied claims because either the initial claim was purportedly filed "late" or because the purportedly "missing" documentation to "perfect" the claim was filed "late."   Radian makes these assertions even though Nationstar is only required to substantially comply with the Policies' proof of loss requirements, and even though Radian has not demonstrated, nor does Radian assert, that it has suffered prejudice as a result of any purportedly "late" claim.

74.     Radian's assertions arise not from a reasonable approach to claims handling but from its post-hoc effort to impermissibly shield itself from exposure to valid claims to protect its financial standing at the expense of its insureds.

75.     As a result of these improper denials, which are in breach of the Policies, Nationstar and the insureds have suffered damage. Nationstar and the insureds will continue to suffer damage on an ongoing basis as a result of these improper claim denials.

76.     Radian's claim denials for documentation and timeliness reasons are based on improper interpretations of the Policies, inconsistent with Radian's prior course of conduct, breach the Policies, and are unreasonable and in bad faith. Further, Radian must produce evidence that it has been prejudiced by Nationstar's purported untimeliness before it can deny a

claim on such a basis. *See Ocwen Loan Servicing, LLC v. Radian Guaranty, Inc.*, Civil Action No. 16-6586 (E.D. Pa.), at Doc. 96.

77.     Based upon Radian's past practices, Nationstar expects that Radian will continue to deny claims based on improper and incorrect interpretations of the Policies in order to justify its wrongful and bad faith claim denials.

### 3.    Radian's Improper Rescissions

78.     In addition to Radian's improper curtailments and denials, Radian's rescissions are largely based on its bad faith post-loss underwriting – *i.e.*, attempting to avoid the very obligations it willingly undertook to insure now that the risks it voluntarily underwrote have become manifest. Despite Radian's experience in the mortgage business, its transparent access to lenders' and servicers' mortgage business information, and its review and re-review of substantial documentation related to the loans, Radian now contends that it can rescind coverage based on a post-hoc re-underwriting of the loans it agreed to insure.

79.     Radian wrongfully and in breach of its Policies has asserted a variety of reasons to justify its wrongful conduct, such as:  (1) alleged borrower misrepresentation of the borrower's income; (2) alleged borrower misrepresentation of the borrower's employment; (3) alleged borrower misrepresentation of the borrower's assets; (4) alleged borrower misrepresentation based on purportedly undisclosed borrower liabilities/debts; (5) alleged borrower misrepresentation concerning occupancy; (6) alleged appraiser misrepresentation of the subject property's value; and (7) alleged underwriting guideline violations.

80.     The Policies authorize Radian to rescind coverage in very limited situations.

81.     Condition Five (D) of the Master Policy (which is applicable to the Flow Policies and Bulk Policies), for example, provides that Radian is not liable for:

> Any Loss for which a Claim is made in connection with a Certificate of Insurance issued in reliance upon an Application for Insurance containing any material

misstatement, misrepresentation or omission, whether intentional or otherwise or as a result of any act of fraud; provided, however, that unless the Insured had knowledge of or participated in a Third-Party Misrepresentation or Fraud at the time it was made, the Company shall not rescind or deny coverage, or adjust any Claim based on such Third-Party Misrepresentation or Fraud.

Ex. 3, Master Policy at 10.

82.    "Application for Insurance" is defined in the Master Policy as "all documents, materials, statements and exhibits, whether or not prepared by the Insured, submitted to the Company by or on behalf of the Insured for the purpose of obtaining a Commitment of Insurance or a Certificate of Insurance."  Ex. 3, Master Policy at 4.

83.    "Third-Party Misrepresentation or Fraud" is defined in the Master Policy as "a misrepresentation or fraud by anyone other than the Insured, its employees or agents. For purposes of this definition, the Insured's agents shall include any mortgage broker and/or intermediary originating the Loan, or anyone under contract with such persons in connection with the origination of the Loan, such as an appraiser or escrow agent." Ex. 3, Master Policy at 6.

84.    By the terms of the Master Policy, Radian may only rescind where it has issued a certificate in reliance on the correctness of information submitted to it in the Application for Insurance. The Master Policy does not state that Radian always relies on the information contained in the Application in making its decision to provide insurance for a particular loan, and Radian does not rely on information outside the Application. Thus, information in the Application not relied on by Radian (such as unverified borrower information on a stated income or other reduced documentation loan) or information outside of what is supplied to Radian on the Application for Insurance is not relied on by Radian and cannot form the basis for a rescission. Moreover, even to the extent that Radian relies on any information, it is not permitted to rescind coverage based on a misrepresentation by a third party (*e.g.*, a borrower) unless it can prove through credible and reliable evidence that the servicer or the insured, "had knowledge of or

participated in [that] Third-Party Misrepresentation or Fraud at the time it was made." The alleged misrepresentation also must be material.

85.     Radian's Pool Policies similarly limit Radian's right to rescind. Under the express terms of its Pool Policies, Radian is not permitted to rescind coverage for a loan based on a borrower misrepresentation unless or until it can prove that the corresponding claim was "made in connection with" that borrower misrepresentation. At a minimum, that requires Radian to prove the insured or servicer had knowledge of or participated in the borrower misrepresentation at the time it was made.

### (a)     Improper Rescissions Based on Alleged Misrepresentations of Borrower-Related Information

86.     Radian claims to have learned from various sources that information provided by or on behalf of the borrower to the lender allegedly was misrepresented. Such purported information concerns, in various cases, the borrower's income, employment, assets, debts, and occupancy. Based on this putative information, Radian has improperly rescinded coverage for these individual loans under the Policies and these rescissions have led to repurchase demands and other claims made to Nationstar by various third parties.

87.     What's more, the information provided by Radian to support its rescissions with respect to alleged borrower misrepresentation of income, employment, assets, undisclosed debts and occupancy, among others, is untrustworthy, unsubstantiated, based on double or triple hearsay, and does not satisfy the standard of proof that Radian must put forth to establish that there were material misrepresentations entitling it to avoid coverage.

### (b)     Improper Rescissions Based on Alleged Misrepresentation of Property Value

88.     The information provided by Radian to support its rescissions based on alleged misrepresentation of the value of properties is equally meritless.  Radian generally relies on a

review or retrospective appraisal that merely disagrees with the original appraiser's opinion as to the value of the property at the time the loan was originated.

89.     Radian reviewed and approved guidelines that did not require review appraisals (before such loans were even originated); Radian cannot now rely on such information to rescind coverage. Furthermore, since a statement as to the value of a property is an opinion, in order to avoid coverage under the Policies for an individual loan based on an allegedly misrepresented statement of value, applicable law requires that Radian establish that the value opinion set forth by the appraiser was not the appraiser's actual opinion or, at least, that the appraiser's opinion was not rendered in good faith.  It is not sufficient simply to show that a second appraiser has a different opinion, particularly where the second appraiser's opinion was developed with the benefit of hindsight after the real estate market had collapsed.

### (c)     Improper Rescissions Based on Alleged Guideline Violations

90.     In addition to rescissions based on purported misrepresentations, Radian also improperly attempts to rescind coverage based on purported underwriting guideline violations. Radian's Policies do not authorize Radian to rescind coverage based on alleged guideline violations. Once a loan is underwritten, and a certificate of insurance is issued, coverage is bound and Radian may only rescind based on certain limited grounds explicitly set forth in the Policies.

91.     Further, under the express terms of Radian's Delegated Underwriting Endorsement, Radian cannot rescind coverage for a guideline violation.

### G.     RADIAN'S IMPROPER REFUSAL TO RETURN PREMIUM OVERPAYMENTS

92.     Nationstar inadvertently made substantial Premium Overpayments on certain loans covered by the Policies. *See* Ex. 2. Upon this realization, Nationstar contacted Radian, notified Radian of the Premium Overpayments, and requested prompt reimbursement. Radian

refused, and continues to refuse, to reimburse Nationstar for the Premium Overpayments, despite Nationstar's compliance with the terms of the Policies.

93.     Further, by virtue of its refusal to reimburse Nationstar for the Premium Overpayment, Radian has been unjustly enriched by millions of unearned dollars to which Nationstar is legally and equitably entitled.

**COUNT I**
**BREACH OF CONTRACT**

94.     Nationstar incorporates by reference the allegations contained in all of the foregoing paragraphs.

95.     For each loan at issue in this litigation, Radian has received all premiums due under the Policies, and has received timely submitted claims for losses due to default by borrowers in the repayment of loans, except to the extent that such performance is subject to a waiver, estoppel or other avoidance as against Radian.

96.     For each loan at issue in this litigation, Nationstar has substantially complied with all terms, provisions and conditions of the Policies, and has satisfied any applicable retentions or deductibles, except to the extent that such performance is subject to a waiver, estoppel or other avoidance as against Radian.

97.     Radian agreed under the terms and conditions of the Policies to cover losses due to defaults by borrowers in the repayment of loans.  Radian has a contractual obligation to pay covered losses.  Radian has a further obligation to pay covered claims in full and not arbitrarily deduct amounts from covered claim payments without justification.

98.     Radian has also agreed under the terms and conditions of the Policies to administer the Policies in good faith and, specifically, to administer the Policies in such a way as to not increase the Insured's uninsured loss, pursuant to the reciprocity and mutuality of the

parties' obligations.

99.     Radian has also agreed under the terms and conditions of the Policies to conform those Policies to the minimum requirements of any and all applicable laws and regulations promulgated thereto.

100.     After presentation of satisfactory evidence of loss to Radian for loans, claims, and proofs of loss that substantially complied with all the terms, provisions and conditions of the Policies, Radian committed substantial and material breaches of its contractual obligations under the Policies by:

    (a)     failing to pay claims within the time periods required under the Policies;

    (b)     refusing to pay claims within the time periods required under the Policies;

    (c)     wrongfully curtailing claim payments under the Policies;

    (d)     wrongfully denying claims under the Policies;

    (e)     wrongfully rescinding coverage under the Policies; and

    (f)     refusing to reimburse Nationstar for the Premium Overpayments.

101.     In addition, implied in every insurance policy is a covenant that the insurance company will act in good faith and deal fairly with its insured, that the insurance company will do nothing to interfere with the right to receive benefits under the policy, that the insurance company will give at least as much consideration to the interests of the insured as it does its own interests, that the insurance company will exercise diligence, good faith, and fidelity in safeguarding the insured's interests, that it will deal ethically with the insured, and will fairly and adequately inform the insured with respect to the nature and scope of its insurance coverage (hereinafter referred to as the "implied covenant of good faith and fair dealing").

102.     Radian, in violation of the implied covenant of good faith and fair dealing, has refused to acknowledge the coverage provided under the Policies by refusing to pay valid claims or to pay valid claims in full for reasons that are unsubstantiated under the terms and conditions

of the Policies, and has refused to reimburse Premium Overpayments to which it is not entitled. Radian has done so for the purpose of consciously withholding policy benefits and placing its own interests above those of its insured's for the purpose of utilizing money that should have been paid under the terms and conditions of the Policies.

103.    As a direct and proximate result of Radian's contractual breaches of the Policies and of the implied covenant of good faith and fair dealing, Nationstar, on its own behalf or on behalf of the insureds, is authorized to collect substantial monetary damages in an amount to be determined at trial, including compensatory damages in the amount of unpaid insurance claims, restitutionary damages for Premium Overpayments made to Radian, consequential damages, interest, attorneys' fees and costs incurred in pursuing this action, and other such relief the Court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT**

104.    Nationstar incorporates by reference the allegations contained in all of the foregoing paragraphs.

105.    Radian has received all premiums due under the Policies and has received timely submitted claims for losses due to default by borrowers in the repayment of loans, except to the extent that such performance is subject to a waiver, estoppel or other avoidance as against Radian.

106.    Nationstar has substantially complied with all terms, provisions and conditions of the Policies, and has satisfied any applicable retentions or deductibles, except to the extent that such performance is subject to a waiver, estoppel or other avoidance as against Radian.

107.    Nationstar seeks declaratory relief with respect to only those loans identified on Exhibit 1 and only those Policies at issue in this litigation. While a subset of those Policies

contain valid and enforceable arbitration clauses, under applicable and binding precedent, this Court may not enjoin any such arbitration even if it results in piecemeal litigation and should, at a minimum, allow negotiations and impaneling of arbitrators to proceed. *See Ocwen Loan Servicing, LLC v. Radian Guaranty, Inc.*, Civil Action No. 16-6586 (E.D. Pa.), at Doc. 26.

108. Specifically, Nationstar seeks declaratory relief as to how these Policies should be interpreted and applied with regard to issues raised by Radian, including curtailments, denials, and/or rescissions for matters unrelated to the credit quality of the underlying loan or the validity of a claim, such as alleged missing documentation in the loan file.

109. Radian has rescinded coverage and denied claims based on an improper construction of the Policies' terms and conditions. Thousands of individual loans are covered under the Policies. In addition to the individual claims that already have been reported, claims are being submitted on a regular basis to Radian. It is expected that Radian will seek in the future to deny and/or rescind coverage with respect to these loans on the same improper grounds for denial and/or rescission that Radian has already asserted. It also is expected in the future that Radian will seek to arbitrarily deduct amounts from covered claim payments without justification on the same improper grounds Radian already has asserted to support other improper curtailments.

110. Based on its conduct to date, it is clear that Radian disputes the proper construction of the Policies at issue in this litigation with regard to the handling and processing of claims. It also is clear that Radian's curtailment of covered claims is at odds with Nationstar's position, as Nationstar believes that Radian is required to pay the full amount of submitted claims, without Radian's improper deductions or curtailments. Accordingly, it is necessary and proper for the Court to declare the rights and obligations of the Parties under the Policies at issue in this litigation, as more specifically set forth in the Prayer for Relief, in order to guide the

Parties both with regard to claims that currently are pending but also as to claims that continue to be made on a regular basis and certainly will be made in the future.

## COUNT III
## BAD FAITH

111.     Nationstar incorporates by reference the allegations contained in all of the foregoing paragraphs.

112.     As alleged above, for each loan at issue in this litigation, Radian agreed under the terms and conditions of the Policies to provide insurance for losses due to defaults by borrowers in the repayment of the loans.  For each loan at issue in this litigation, Radian received timely submitted valid claims for coverage under the Policies.  Radian has refused to pay these claims even after recognizing that the claims are valid and that Nationstar is entitled to payment.

113.     Radian knew and understood that if it wrongfully rescinded, denied and/or curtailed claims that third parties would seek to have Nationstar repurchase these loans and that Nationstar would be required to expend substantial sums in addressing these repurchase requests.

114.     Further, Radian received substantial Premium Overpayments from Nationstar to which it was not entitled, and despite knowledge of its wrongful receipt of these overpayments, Radian has refused to return these premiums in willful contravention of the Policies.

115.     Radian's conduct as described above and set forth below constitutes bad faith, prohibited by 42 Pa. Cons. Stat. § 8371.

116.     Moreover, Radian has repeatedly violated and continues to violate the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171.1 *et seq*.  While there is no private cause of action for such violations, and no such private cause of action is asserted here, those violations are evidence of Radian's bad faith.

117.   An insurance company has a duty to act with the utmost good faith towards its policyholders.

118.   As discussed in detail above, Radian, in tortious violation of Pennsylvania's bad faith statute, has refused to acknowledge the coverage it provided under the Policies for each individual loan at issue in this litigation by wrongfully rescinding coverage and by refusing to pay and/or curtailing the payment of valid claims for reasons that are unsubstantiated under the terms and conditions of the Policies. Radian has also wrongfully refused to reimburse Nationstar for Premium Overpayments for reasons that are unsubstantiated under the terms and conditions of the Policies.  Radian has done so in order to consciously withhold policy benefits and place its own interests above those of its insured.

119.   Radian's persistent and systematic actions and failures to act were done purposefully, intentionally, and/or with reckless disregard of its obligations under the Policies. Radian's actions and inactions have been with willful and conscious disregard of Nationstar's rights and the consequences of these actions on Nationstar, and with the deliberate intent to vex, injure, and advance Radian's own pecuniary interest.

120.   Radian has acted in bad faith by refusing to fully pay valid claims submitted for coverage for such losses, and by refusing to reimburse Nationstar for the Premium Overpayments it received, and its conduct has been aggravating and outrageous, in that Radian has, among other things:

      (a)   failed to deal fairly with Nationstar and failed to give equal consideration in all matters to Nationstar's and/or other Insureds' interests;

      (b)   engaged in unreasonable, frivolous, or untenable denial of policy benefits;

      (c)   misrepresented pertinent facts or policy provisions relating to coverages at issue;

(d)   asserted inconsistent positions regarding the meaning of its policy provisions and adopted the coverage-limiting interpretation as the correct one;

(e)   compelled Nationstar to institute, continue, or submit to action to recover amounts due under the Policies;

(f)   failed to provide a reasonable explanation of the basis for its various insurance coverage positions;

(g)   refused to investigate claims in a fair, neutral, objective, and unbiased manner;

(h)   engaged in conduct designed to find facts to support a rescission, denial, and curtailment, and ignored facts that support coverage in full;

(i)   failed to promptly settle certain claims, where liability has become reasonably clear in order to influence settlements as to other claims where liability may be reasonably contested;

(j)   denied claims based on perceived claim perfection defects that are unreasonable and not required by the Policies;

(k)   rescinded coverage based on information that was not required to be obtained at origination;

(l)   imposed time limitations for completing foreclosures or other servicing activities that are unreasonable, in violation of federal or state law, and/or not specified in the Policies;

(m)   consciously curtailed claim payments for reasons that are unfounded in a misguided attempt to limit Radian's exposure to the claims at issue;

(n)   refused to reimburse Premium Overpayments that Radian did not earn and to which it is not entitled;

(o)   imposed timelines related to GSE loans and improperly curtailed interest payments on related claims, regardless of individual facts or circumstances of that particular claim; and

(p)   imposed arbitrary servicing performance review curtailments that substantially discounted claims payments without any showing that the servicing was negligent, that any alleged negligence damaged Radian, and/or the amount of the alleged damage itself.

121.   As a result of Radian's bad faith conduct, Nationstar and the owners and trustees have suffered and will continue to suffer substantial monetary damages, including interest and attorneys' fees and costs.  In addition to monetary damages, Nationstar is entitled to an award of

punitive or exemplary damages in such amount as is sufficient to punish Radian for its willful and tortious actions, pursuant to 42 Pa. Cons. Stat. § 8371.

## COUNT IV
## EQUITABLE INDEMNIFICATION

122.    Nationstar incorporates by reference the allegations contained in all of the foregoing paragraphs.

123.    Under the Policies, Radian is obligated to pay mortgage insurance claims for the benefit of certain third party owners of insured loans serviced by Nationstar, including Fannie Mae and Freddie Mac.

124.    As a result of Radian's wrongful curtailment, denial, and/or rescission of claims, Nationstar has been forced to compensate certain of these third party owners for the claim amounts that Radian has failed to pay in full.

125.    Based on the doctrine of equitable indemnification, Nationstar seeks indemnification from Radian for any such amounts Nationstar was forced to pay to these loan owners in compensation for Radian's failure to fulfill its contractual obligations to pay valid claims and/or pay valid claims in full.

## COUNT V
## UNJUST ENRICHMENT

126.    Nationstar incorporates by reference the allegations contained in all of the foregoing paragraphs.

127.    For each loan at issue in this litigation, Radian received timely submitted valid claims for coverage under the Policies. Radian has refused to pay these claims even after recognizing that the claims are valid and that Nationstar is entitled to payment. Further, Radian has received from Nationstar, in its capacity as servicer, substantial Premium Overpayments on the Policies.

128.    By virtue of the payments wrongfully withheld through Radian's improper curtailment, denial and rescission of claims, Radian is in possession of funds that Radian has not earned and to which it is not entitled, and that rightfully should be paid to Nationstar. As such, Radian was conferred a benefit by Nationstar, and has appreciated such benefit, under circumstances that are inequitable for Radian to retain this benefit without the payment of value to Nationstar.

129.    Further, by virtue of Premium Overpayments to Radian, Nationstar has paid Radian premiums that it has not earned and to which it is not entitled. As such, Radian was conferred a benefit by Nationstar, and has appreciated such benefit, under circumstances that are inequitable for Radian to retain this benefit without the payment of value to Nationstar.

130.    Nationstar has notified Radian of the Premium Overpayments and wrongful curtailments, denials and rescissions of claims, and has made explicit demands of Radian to pay these claims and return these Premium Overpayments, but Radian has refused and continues to retain these funds.

131.    As a result of Radian's unjust enrichment, Nationstar and the insureds have suffered and will continue to suffer substantial monetary damages and are entitled to restitution for the amount of Premium Overpayments made to Radian and the amount withheld by virtue of the wrongful curtailments, denials and rescissions.

## COUNT VI
### CONVERSION

132.    Nationstar incorporates by reference the allegations contained in all of the foregoing paragraphs.

133.    For each loan at issue in this litigation, Radian received timely submitted valid claims for coverage under the Policies. Radian has refused to pay these claims even after

recognizing that the claims are valid and that Nationstar is entitled to payment. Further, Radian has received from Nationstar, in its capacity as servicer, substantial Premium Overpayments on the Policies.

134.    By virtue of Radian's refusal to pay the claims through its wrongful curtailments, denials and rescissions, Radian has deprived Nationstar and the insureds of their right to payments, and has willfully interfered with Nationstar's and the insureds' use and possession of these payments, without the consent of Nationstar and the insureds and without lawful justification.

135.    Further, by virtue of Premium Overpayments to Radian, Radian has deprived Nationstar and the insureds of their right to these payments, and has willfully interfered with Nationstar's and the insureds' use and possession of these payments, without the consent of Nationstar and the insureds and without lawful justification.

136.    Nationstar has notified Radian of the Premium Overpayments and wrongful curtailments, denials and rescissions of claims, and has made explicit demands of Radian to pay these claims and return these Premium Overpayments, but Radian continues to unreasonably withhold possession of these funds from Nationstar and the insureds.

137.    As a result of Radian's conversion of the property of Nationstar and the insureds, Nationstar and the insureds have suffered and will continue to suffer substantial monetary damages and are entitled to restitution for the amount of Premium Overpayments made to Radian and the amount withheld by virtue of the wrongful curtailments, denials and rescissions.

## PRAYER FOR RELIEF

WHEREFORE, Nationstar respectfully seeks the following relief:

1.    With respect to the First Cause of Action, Nationstar requests that the Court enter judgment against Radian for actual money damages in an amount to be proven at trial, including

compensatory damages in the amount of unpaid insurance claims, consequential damages, interest, attorneys' fees and other costs incurred in pursuing this action, and other such relief the Court deems just and proper.

2.      With respect to the Second Cause of Action, Nationstar requests that the Court declare the rights and obligations of the Parties under the Policies at issue in this litigation, including but not limited to, a declaration that:

a.   To prove negligence in servicing, Radian must prove that Nationstar acted inconsistent with the conduct of a reasonably prudent servicer under the same circumstances and during the same time period.

b.   The proper servicing standard for loans included in securitizations is set forth in the applicable pooling and servicing agreement, not Radian's servicing guide or any GSE servicing guide.

c.   Radian must cite to the relevant provision(s) in its Policies upon which it relies to curtail claims;

d.   The rights and responsibilities of the Parties are governed by the Policies and not any servicing guide or claims manual, including Radian's Guide, that have not been incorporated into and/or endorsed to the Policies;

e.   Radian cannot impose a time limitation for beginning, pursuing or completing Appropriate Proceedings or loss mitigation that is not specified in the Policies and/or violates state or federal law;

f.   Radian cannot impose arbitrary penalties for perceived failures in loss mitigation when there is no basis in the Policies for such "below the line" curtailments;

g.   The doctrine of substantial compliance applies with respect to compliance with the submission of claims and perfected claims under the Policies;

h.   The doctrine of substantial compliance applies with respect to any time-limitation provisions under the Policies; Radian bears the burden of proving by clear and convincing evidence that it is authorized under the Policies and/or applicable law to deny claims as "late" or based on "missing" documents.

i.   Radian is required to prove that is has suffered actual prejudice by a delay in the submission of a claim or perfected claim before it can deny the claim as "late";

j.   Radian cannot deny a claim based on Nationstar's purported failure to provide "missing" documentation from the loan origination file if Radian does not demonstrate that:   it has suffered actual prejudice; such documentation was

material to the underwriter's credit decision at the time of origination; and the information within such documentation was not otherwise available;

k. Radian cannot establish actual prejudice if, before Nationstar was required to file a claim, Radian received timely notice of default and monthly reports on the status of the loan and any foreclosure proceedings between the date notice was provided and the date the foreclosure was completed.

l. Radian cannot establish actual prejudice if it did not attempt to evaluate its liability or investigate the claim after it was deemed "late" or after it determined documents were "missing" and before it denied the claim.

m. Radian cannot establish actual prejudice if it did evaluate its liability or investigate the claim after it was deemed "late" or after it determined documents were "missing" and concluded there was no misrepresentation or other grounds for rescission.

n. Radian bears the burden of proving by clear and convincing evidence that it is authorized under the Policies and/or applicable law to curtail claims.

o. Radian cannot deny a claim based on Nationstar's failure to provide "missing" documentation from the servicing file;

p. Radian is required to return the total premium paid on loans where it denies the claim;

q. Even if Radian has a valid "missing" documentation defense, Radian's remedy is a curtailment of the claim amount and not a complete denial of the claim;

r. Radian bears the risk of borrower misrepresentation under its Policies;

s. Under all of its Policies, Radian cannot rescind unless it proves through credible and admissible evidence that there was an intentional first party misrepresentation and that such misrepresentation was material;

t. Radian cannot rescind based on an alleged misrepresentation of information that was not required to be obtained by the underwriter at origination under the applicable guidelines approved by Radian and thus not contained within the loan origination file;

u. Radian may not rely on retrospective or review appraisals to rescind based on an alleged misrepresentation of the value of the subject property;

v. Even if Radian is authorized to rely on retrospective or review appraisals to rescind based on an alleged misrepresentation of the value of the subject property, Radian must prove through credible and admissible evidence that the opinion stated was not the appraiser's actual opinion or, at least, that the appraiser's opinion was made in bad faith;

w.  Radian is not authorized to rescind coverage under its Flow Policies based on an alleged guideline violation;

x.  Even if certain Policies authorize Radian to rescind based on guideline violations, the guideline violation must be material and must be based on information required to be obtained by the underwriter at the time of origination;

y.  Radian cannot rescind based on borrower misrepresentation through the guise of a guideline violation;

z.  Radian must consider compensating factors when assessing whether there has been a material breach of underwriting guidelines; if Radian is authorized to curtail claims, then Radian must prove by clear and convincing evidence that Nationstar was negligent, that negligence was either the proximate cause of such loss or materially increased Radian's loss, and the amount of such an increase.

aa. Any applicable statute of limitations, policy provisions limiting the time in which an action may be commenced, or other defenses to the commencement of a proceeding based on the passage of time does not begin to run on the date of foreclosure (or other approved sale);

bb. Any applicable statute of limitations, policy provisions limiting the time in which an action may be commenced, or other defenses to the commencement of a proceeding based on the passage of time begins to run on the date Radian denies, rescinds or curtails the claim or, if applicable, the date Radian declines to overturn its denial, rescissions or curtailment after Nationstar appeals such a determination; and

cc. If any policy provision limiting the time in which an action may be commenced conflicts with the laws of the jurisdiction in which the subject Property is located, the laws of the jurisdiction in which the subject Property is located must be applied.

3.      With respect to the Third Cause of Action, Nationstar requests that the Court enter judgment against Radian for attorneys' fees and costs, punitive damages, interest and all damages and other available relief recoverable by law.

4.      With respect to the Fourth Cause of Action, Nationstar requests that the Court enter judgment against Radian for equitable indemnification of any sums Nationstar was forced to pay certain loan owners in compensation for Radian's nonpayment or curtailment of claim payments owed to such third party owners.

5.      With respect to the Fifth Cause of Action, Nationstar requests that the Court enter judgment against Radian for actual money damages including restitutionary damages in the amount of funds withheld through wrongful nonpayment or curtailment of claims and Premium Overpayments made to Radian, pre-judgment and post-judgment interest as allowed by law, attorneys fees as allowed by law, and other such relief the Court deems just and proper.

6.      With respect to the Sixth Cause of Action, Nationstar requests that the Court enter judgment against Radian for actual money damages including restitutionary damages in the amount of funds withheld through wrongful nonpayment or curtailment of claims and Premium Overpayments made to Radian, pre-judgment and post-judgment interest as allowed by law, attorney's fees as allowed by law, and other such relief the Court deems just and proper.

Respectfully submitted,

REED SMITH LLP

Dated:  August 31, 2018                        _____s/ Matthew D. Rosso_____
                                               Matthew D. Rosso (PA 203696)
                                               Three Logan Square
                                               1717 Arch Street, Suite 3100
                                               Philadelphia, PA 19103
                                               T:  (215) 851-8100
                                               F:  (215) 851-1420
                                               mrosso@reedsmith.com

                                               *Counsel for Plaintiffs*